UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN C. TOMAKA,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

        Defendant.

18-CV-00912-MJR
DECISION AND ORDER

---

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 19)

Plaintiff John C. Tomaka ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is granted, and defendant's motion (Dkt. No. 17) is denied.

## BACKGROUND

On May 2, 2014, plaintiff filed a DIB application alleging disability beginning May 28, 2013, due to traumatic brain injury, short term memory loss, fusion T2-T10, loss of

---

[1] The Clerk of Court is directed to amend the caption accordingly.

consciousness due to accident, and cognitive impairment. (Tr. 103, 191-95)[2] Plaintiff's claim was initially denied, and a subsequent hearing was held on January 25, 2017, in Buffalo, New York, before Administrative Law Judge ("ALJ") Sharon Seeley. (Tr. 48-100, 101) Plaintiff was represented by an attorney, and a vocational expert also appeared and testified. (Tr. 48, 270-71) On July 10, 2017, the ALJ issued a decision finding plaintiff not disabled. (Tr. 7-30) The Appeals Council denied plaintiff's subsequent request for review on July 20, 2018. (Tr. 1-6) This timely action followed. (Dkt. No. 1)

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

---

[2] Citations to "Tr.___" refer to the pages of the administrative transcript. (Dkt. No. 8)

2

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

3

whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 28, 2013. (Tr. 12) At step two, the ALJ found that plaintiff had the severe impairments of history of traumatic brain injury, neurocognitive disorder, adjustment disorder with anxiety, and fusion at T1-T-10 of the thoracic spine. (Tr. 13) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 13-14) Before proceeding to step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) because he could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday.[3] Additionally, plaintiff could occasionally kneel or balance; was able to understand, remember, and carry out simple, routine, repetitive instructions and tasks; and was able to maintain attention and concentration sufficient for such tasks with customary work breaks. He could make simple, routine work-related decisions commensurate with such tasks. He could not operate dangerous machinery or motor vehicles, and could not be exposed to hazards such as unprotected heights or moving machinery. Plaintiff could work in an environment with minimal changes in work routines or settings. (Tr. 16) At step four, the ALJ found that plaintiff unable to perform any past

---

[3] *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.")

6

relevant work, including his longstanding occupation of elevator mechanic. (Tr. 23) At step five, the ALJ determined that plaintiff was capable of performing other work existing in significant numbers in the national economy, including jobs such as laundry worker II, food service worker, kitchen helper, mail clerk, small products assembler, and cashier II. (Tr. 24-25) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 25)

IV.   *The Parties' Arguments*

Plaintiff seeks remand on the following grounds: (1) the ALJ failed to obtain plaintiff's prior ALJ decision granting a closed period of benefits; (2) her RFC finding was unsupported by substantial evidence; and (3) she failed to properly evaluate plaintiff's credibility. (*See* Dkt. No. 9-1 at 1-30)

With respect to the first ground for relief, Plaintiff appears to argue that the ALJ violated the Social Security Administration, Office of Hearings and Appeals, Hearings, Appeals, and Litigation Law Manual ("HALLEX"), by failing to obtain the prior ALJ decision granting a closed period of benefits. (Dkt. No. 9-1 at 12) Specifically, he cites to HALLEX I-2-6-58, which states: "[i]f there was a prior ALJ decision, the ALJ must associate the prior ALJ decision with the current claim(s) file." HALLEX I–2–6–58(B). He additionally argues that the ALJ and the State agency medical consultant reviewed medical records outside of the current administrative record. (Dkt. No. 9-1 at 13)

In response, defendant argues, without citation to any legal authority, that the "period is not at issue and the Court has no jurisdiction over it," and that there is no allegation of disability during [that] time." (Dkt. No. 17-1 at 16) Notwithstanding this argument, the Commissioner inexplicably filed a supplemental transcript with this Court

on June 18, 2019, that included a copy of plaintiff's Hearing Decision dated January 27, 2012 granting a closed period of benefits. (Dkt. No. 11) Defendant states that, "[a]lthough this period is not at issue, a supplemental transcript was obtained and made part of the record." (Dkt. No. 17-1 at 16) Further, defendant's supplemental certification states that these documents were "not available when the original record in the case of John C. Tomaka certified on September 22, 2018." (Dkt. No. 11 at 1) Plaintiff, in turn, requests that the supplemental transcript be stricken from the record. (Dkt. No. 18)

V. *Analysis*

Before addressing the parties' arguments, a brief recitation of the procedural history in this case is instructive. The record shows that plaintiff filed an application for Title II benefits in 2010, in which he requested and was granted a closed period of disability from March 7, 2010, through May 2, 2011. (Tr. 39, 53-54) Plaintiff's disability claim stemmed from a serious motor vehicle accident in 2010, after which he underwent a period of rehabilitation that warranted the closed period. (Tr. 19, 37-47, 53-54; *see also* Dkt. No. 9-1 at 6) Plaintiff then returned to work at the substantial gainful activity level from May, 2011, through May, 2013. (Tr. 19, 43, 208)

Two years later, in June 2013, plaintiff filed a second application for benefits alleging a disability onset date of May 28, 2013. (Tr. 191-95) That application was denied on August 1, 2013. (Tr. 101, 121-24) Plaintiff filed the current application for benefits in May 2014, again alleging an onset date of May 28, 2013. (Tr. 196-202)

In her decision on the current application, the ALJ observed that plaintiff had filed multiple prior Title II applications, including the 2010 application that granted a closed period of benefits and a 2013 application that was denied in a notice of initial

determination. (Tr. 10) She then went on to discuss that by alleging an onset date during a previously adjudicated period (May 28, 2013), Plaintiff made an implied request "for reopening of the most recent prior application." (Tr. 10) With respect to the 2013 application, the ALJ determined that Plaintiff had not satisfied the conditions for reopening. (Tr. 10) While certain documents related to the 2013 application were incorporated into the record before the ALJ as Exhibits B1A, B4A, and B1B, *see* Tr. 101, 116-20, the only document made part of the record relative to the 2010 application was the transcript of the ALJ hearing dated January 19, 2012. (Tr. 37-47)

To the extent that plaintiff suggests that the ALJ committed legal error by misapplying HALLEX, courts in this Circuit have routinely dismissed such claims. *See Gallo v. Colvin*, No. 15-CV-9302, 2016 WL 7744444, at *12 (S.D.N.Y. Dec. 23, 2016) ("HALLEX is simply a set of internal guidelines for the SSA, not regulations promulgated by the Commissioner, and therefore . . . a failure to follow HALLEX does not necessarily constitute legal error.") (citation and internal quotation marks omitted); *Dority v. Comm'r of Soc. Sec.*, No. 14–CV–00285, 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015) ("The Second Circuit has not yet determined whether or not HALLEX policies are binding; however, other Circuits and district courts within the Second Circuit have found that 'HALLEX policies are not regulations and therefore not deserving of controlling weight.'") (quoting *Edwards v. Astrue*, No. 10cv1017 2011, WL 3490024, at *6 (D. Conn. Aug. 10, 2011)); *Salati v. Saul*, No. 18 CIV. 8136, 2019 WL 5999819, at *12 (S.D.N.Y. Nov. 14, 2019) ("HALLEX does not bind an ALJ."). Notably, the provision cited states that associating the prior ALJ decision with the current claim file "is especially critical to comply with" Acquiescence Rulings relating to decisions of the United States Courts of Appeals

for the Fourth, Sixth, and Ninth Circuits. See HALLEX I-2-6-58(B). The Court therefore denies plaintiff's request for remand on this basis alone.

Nonetheless, given the procedural irregularities in this case, the Court is unable to conduct a meaningful review of the record before it. "[A] reviewing court is limited to reviewing the administrative record that was before the agency and formed the basis for the agency's decision." *Cross v. Astrue*, No. 08-CV-0862, 2010 WL 2399379, at *3 (N.D.N.Y. May 24, 2010), *report and recommendation adopted*, No. 08-CV-862, 2010 WL 2399346 (N.D.N.Y. June 10, 2010). "A Court may therefore strike materials submitted to it on an appeal from agency action that were not part of the administrative record on which the challenged agency action was based." *State of New York v. Shalala*, No. 93 CIV. 1330, 1996 WL 87240, at *5 (S.D.N.Y. Feb. 29, 1996).

*Cross* involved a social security plaintiff's motion to strike a supplemental transcript. 2010 WL 2399379, at *1-2. There, the Court held that the Commissioner's submission of a supplemental certified administrative record was proper because the document was "inadvertently omitted from the original" certified record. *Id.* at *2. The Commissioner in *Cross* provided a certification and declaration explaining the inadvertent omission. *Id.* The Court ultimately denied the plaintiff's motion to strike the supplemental transcript, finding that the omitted document had indeed been part of the original certified record, and reasoning that it "[could not] strike a portion of the evidence upon which the Commissioner relied in formulating his decision." *Id.*

Here, in contrast to *Cross*, there is no indication that this document was part of the administrative record, or that it was before the ALJ or the Appeals Council. Nor is there any suggestion that its absence was the result of inadvertence or oversight. Rather, the

10

Commissioner submits that it was simply not available when the original case certified on September 22, 2018. (Dkt. No. 11)

The ALJ hearing decision dated January 27, 2012, is not contained in the List of Exhibits accompanying the current ALJ decision and does not contain an exhibit number. (Dkt. No. 8) Yet both the ALJ and the State agency medical consultant in this case observed that plaintiff was previously approved for benefits for a closed period of March 7, 2010 to May 2, 2011, without referring to the source of this information. (Tr. 10, 109-10) While the transcript of the prior ALJ *hearing* was included in the current administrative record, the ALJ *decision* granting the closed period of benefits was not. (Tr. 37-47) Under these circumstances, the Court is unable to determine what evidence was present at the time of the current ALJ decision, and, likewise, cannot conclude whether ALJ's prior determination was unavailable at the time of the current ALJ hearing and decision. Therefore, as there is no proof that the supplemental filing was part of the record before the ALJ, this Court declines to consider it.

"Generally, if an administrative record does not support the agency action, or if a reviewing court cannot evaluate the challenged agency action on the basis of the record before it, the court is to remand to the agency for additional investigation, rather than admit new evidence." *Jeanniton v. Berryhill*, No. 15-CV-5145, 2017 WL 1214480, at *12 (E.D.N.Y. Mar. 31, 2017) Such is the case here, and the Court finds that further administrative proceedings are required. Finding remand necessary for these reasons, the Court need not reach plaintiff's remaining arguments. *See, e.g., Bell v. Colvin*, No. 15-CV-01160, 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various

determinations made by [the] ALJ" where the court had already determined remand was warranted).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is granted, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 17) is denied. Accordingly, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

**SO ORDERED.**

Dated:  January 21, 2020
        Buffalo, New York

                                            _____
                                            MICHAEL J. ROEMER
                                            United States Magistrate Judge